TODD SPITZER, DISTRICT ATTORNEY
COUNTY OF ORANGE, STATE OF CALIFORNIA
BY:    MATTHEW BRADBURY
       Deputy District Attorney
       State Bar Number 312887
300 N. FLOWER STREET
SANTA ANA, CALIFORNIA 92703
TELEPHONE: (714) 397-6278

**IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**IN AND FOR THE COUNTY OF ORANGE, CENTRAL JUSTICE CENTER**

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, )<br>                              Plaintiff, )<br> )<br>                    vs.                    )<br> )<br> )<br>ROBERT MCDOUGAL,                      )<br>                             Defendant.  )<br> )<br> ) | Case No.: 22WF2015<br><br>PEOPLE'S SENTENCING BRIEF<br><br>Date:  August 7, 2023<br>Time:  9:00 a.m.<br>Dept:  C5 |

## I. INTRODUCTION

On July 27, 2022, the Orange County District Attorney's Office filed criminal charges against Robert McDougal (the Defendant). On June 20, 2023, the Defendant was held to answer on felony charges of P.C. 422(a) and P.C. 646.9(a) at the West Justice Center. The People submit this sentencing brief for the Court's awareness in advance of any resolution discussions or jury trial verdict.

## II. STATEMENT OF FACTS

In the morning hours of July 23, 2022, Orange Coast College Campus Security Officer Timothy Winer received a Facebook message from Robert McDougal (the Defendant). The messages read, "You know who that is? Violent sociopathic bullies like him are getting

1

DISC-10477

punished." Alongside the text messages, the Defendant sent a photo of two law enforcement officials in Costa Mesa. By the Defendant's own later admission, he believed one of the subjects shown in the photo was Winer. He searched Winer on Google and social media sites to attempt to identify him before sending the message over the Facebook Messenger application.

Costa Mesa police officers arrested the Defendant at a local coffee shop and booked him into jail on criminal threats and stalking charges. While in jail, the Defendant made several phone calls to his mother. In those calls, they discussed the past cases and new charges. The Defendant wanted his mother to post his bail and discussed fleeing the jurisdiction if he was to be released from custody. In a post-Miranda interview with Costa Mesa officers, the Defendant admitted sending the message to Winer.

In March 2023, several months after the filing of charges for this threat, the Defendant published a 66 page first person account of his long history of conflict with the Orange Coast Community College. The document, titled, "The Coast Community District & Orange County Government is An Authoritarian, Fascist, Communist, Unconstitutional, Lawless, Tyrannical Dictatorship," described the Defendant's numerous run-ins with the school and local police and court officials over the past several years. The Defendant mentioned victim Tim Winer by name over a dozen times in the piece. Near the end of the document, he wrote, "And it seems pretty obvious an insurrection is the only way this dictatorship's reign can come to an end." The Defendant concluded the piece by writing, "I do not recognize the government of Orange County as legitimate. We need to have systems outside of OC catch up with reality: the Orange County government has completely lost its mind."

It is extremely concerning to the People that the filing of felony charges against the Defendant only motivated him to lash out further against police, prosecutors, and judges who have attempted to hold him accountable in the past. By referencing the victim by name numerous times and referring to him as a "pig," the Defendant made it clear he has no regard for authority, public safety, or following the law. On the second to last page, he wrote, "I still need to work tirelessly to make the Coast Community District lose any and all state funding."

People's Sentencing Brief | 22WF2015

DISC-10478

The July 2022 Facebook messages are just the latest of many incidents where the Defendant has harassed and stalked Winer and others at the Orange Coast College campus. In 2017, the Defendant was a student at OCC. He took a class exam and was not pleased with his test score. After being denied the opportunity to improve his score, the Defendant went back to campus and walked into the professor's class (that he was no longer enrolled in). That professor called OCC campus security, which forcibly escorted him off school grounds. Tim Winer was one of those security officers.

The Defendant returned to campus a couple days later and vandalized two campus security vehicles by puncturing tires and carving racial slurs into the sides of the vehicles. The school received a civil court restraining order against the Defendant, but he violated it several times in 2017 and 2018, including by returning to campus repeatedly and by directly contacting that same professor. In one email to that professor (in direct violation of a restraining order in place at the time), the Defendant wrote, "OCC will never have peace until I can take the classes I want to take. I'm still gonna be doing this in 30 years nonstop."

In the years since, the Defendant has been subject to court orders and probation terms and has served jail time and time on electronic monitoring for his actions. In the following sections, I describe how the many measures put in place have not deterred him from continuing to contact and threaten Tim Winer and other people involved in that original series of incidents. In 2022, in response to receiving the above-described social media messages, Winer sought a concealed-carry weapons permit and reported the Defendant to multiple law enforcement agencies. As Winer testified during the preliminary hearing on the current case, he remains in fear for his and his family's safety.

### III. THE DEFENDANT'S CRIMINAL BACKGROUND SHOWS HE CANNOT FOLLOW ORDERS OF THE COURT OR PROBATION

On July 12, 2018, the Defendant pled guilty to several misdemeanor charges stemming from a series of incidents where he harassed school officials at Orange Coast College, vandalized OCC security vehicles, repeatedly violated restraining orders barring him from contacting OCC, and resisted police during those encounters. The Defendant was placed on formal probation and

3

DISC-10479

sentenced to serve a year in the Orange County Jail, but that jail time was stayed pending completion of probation. He was ordered to refrain from contacting anyone associated with OCC, to maintain residence in California, to refrain from commenting about his cases on social media, and to comply with all other orders of the Court. Between 2018 and 2020, the Defendant violated these probation terms numerous times and in many different ways. The People's Sentencing Brief, filed on December 10, 2020 by Deputy District Attorney Deborah Kwon (and found on VISION for the Court's reference), outlines these various violations.

A reading of the violations makes it clear the Defendant has shown no regard for following court orders or leaving his past victims or cases alone. Just as he showed in the current case, the Defendant has maintained an obsession with Orange Coast College and other involved parties for years and years, even when ordered to leave things alone with the threat of additional custody time at stake. Even before this newest July 2022 incident, it was evident that public safety cannot be maintained with the Defendant residing out of custody at present.

The Defendant was a 21 year old community college student when he first began terrorizing school staff and security personnel at OCC back in 2017. Now, six years later, he continues to seek revenge for misplaced hatred and anger he holds toward school personnel, including Winer, in the active case. His parents, especially his mother, aid and abet his failures to abide by the rules. His mother moved him to a rented "Airbnb" residence in Florida while he was on Orange County probation. She has repeatedly helped post his bail amounts after arrests. And, she sent a text message where she minimized the Defendant's conduct in his most recent threats incident, which I describe further below. All this is to say the Defendant and his family continue to evade full accountability for his continued threats to people he feels have harmed him.

## IV. THE DEFENDANT'S MORE RECENT CONDUCT SHOWS HE NEEDS TO BE HELD FULLY ACCOUNTABLE

On July 24, 2023, after the Defendant was held to answer on felony charges in this case, the People learned of yet another concerning incident. Years ago, the Defendant underwent a surgical operation while living in Florida. The surgery allegedly caused complications and the Defendant has held a grudge against the surgeon ever since. This grudge has led to the Defendant

4

DISC-10480

making threats against the surgeon and other people in the medical field. It has led law enforcement agencies in Florida and California to further monitor the Defendant out of concerns for the safety of this surgeon.

In July, while out on $100,000 bail for court case 22WF2015, the Defendant sent text messages to an associate of the surgeon stating he would "do a murder suicide" and kill the doctor (while naming him by name) and then kill himself. This caused police agencies and threat assessment groups to immediately search out the Defendant and ensure the safety of this surgeon. Even more concerningly, this is the second time the Defendant has said this. On August 26, 2020, he called the surgeon's medical office and told the receptionist he was planning to come to the office, stab the surgeon with a screwdriver, and then kill himself.

This most recent incident, coupled with the Defendant's 66 page document published in March of this year, show that court proceedings, prior probation grants, and even six-figure bail amounts do not dissuade the Defendant from continuing his years' long tirade against the many people and groups he feels have wronged him. No level of concern or out of custody supervision is sufficient to protect the public from these ongoing threats.

## V. THE PEOPLE'S SENTENCE RECOMMENDATION FOR CASE 22WF2015

Past charges and convictions did not deter the Defendant. Prior stints on probation did not dissuade him. Previous time spent in custody has done little to discourage him. And, the filing of new felony charges in the present case only emboldened him more. The People see no option here other than to recommend a state prison sentence should the Defendant plead guilty or suffer a conviction at trial for this newest offense. The goal of formal (felony) probation is to allow a convicted Defendant an opportunity to remain at home, in the community, while he or she proves state prison is unnecessary. The Defendant in this case has repeatedly shown the opposite. As his record on probation demonstrates, periodic check-ins with a probation officer will not rehabilitate him. For these reasons, the People recommend the Court sentence the Defendant to two years in state prison upon a conviction at trial or by guilty plea. This would constitute a "mid-term" sentence on the violation of Penal Code section 422(a) ("Criminal Threats"). The threat in this case was a series of messages of Facebook to the victim, but they are not isolated

5

DISC-10481

messages. They are just one of many times the Defendant has abused and harassed Winer and other OCC personnel dating back over the past several years.

## V. CONCLUSION

The People respectfully request that, upon a conviction for criminal threats and stalking in this case, the Court sentence the Defendant to two years in state prison. This request is based on the aforementioned criminal history, facts of the current case, and the Defendant's repeated inability to follow the orders and restrictions of probation, bail, or the Court over the past several years.

By: _____

MATTHEW BRADBURY

Deputy District Attorney

6

People's Sentencing Brief | 22WF2015

DISC-10482