UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA    :

v.                       :        Case No. 8:24-CR-00312-VMC-SPF

ROBERT BOUTON MCDOUGAL          :

### SENTENCING MEMORANDUM AND MOTIONS FOR DOWNWARD DEPARTURE AND VARIANCE

Defendant Robert Bouton McDougal, by and through undersigned counsel, pursuant to 18 U.S.C. §§ 3553 and 3661; U.S.S.G. §§ 5K2.0 and 5K2.13; and Rule 32(i) of the Federal Rules of Criminal Procedure, hereby moves this Honorable Court to depart downward from the applicable advisory Sentencing Guidelines range and, in addition, presents the following relevant information for the Court to consider in determining a reasonable sentence to impose in this case:

### Facts and Sentencing Considerations

The instant case was the direct result of Mr. McDougal's mental health conditions and was fueled by circumstances surrounding a surgery that took place on Saturday, February 8, 2020, along with the continuous pain and scarring that remains to this day. Mr. McDougal and his family believe they were lied to by Dr. Fratini, the regarding the surgery being warranted and required due to an emergency as one might expect in the emergency room of a hospital or an elective surgery as suggested by the medical records and Dr. Fratini.

Regardless of this traumatic event and the ongoing pain and anger towards, Dr. Fratini and his family, Mr. McDougal recognizes that his online rantings related to Dr. Fratini and his family were inappropriate, unlawful and should never have been posted or communicated. Mr. McDougal accepts responsibility for his actions and recognizes the fear and unnecessary use of resources that his actions caused. The evidence clearly establishes, however, that Mr. McDougal never had any intention of acting on the threats he made. This is true despite the troubling google searches that will be presented by the United States during the sentencing. The fact that he never made any attempts to act on his threats and rantings over a four-year period, proves that his threats were the hollow words of a mentally ill young man who was acting inappropriately out of anger.

Mr. McDougal has pled guilty to one count of stalking in violation of 18 U.S.C. § 2261 and three counts of threats to injure in violation of 18 U.S.C. § 875(c). The advisory Guidelines range, as calculated by Probation, falls at total offense level 22 and criminal history category III. We are asking the court to modify the guideline range to offense level 20 and criminal history category III based on a two-level reduction for acceptance of responsibility. Regardless, of the court's ultimate finding on this issue, Mr. McDougal will ask this Court to depart downward from the advisory Guidelines range based on his diminished mental capacity to a sentence of

20 months in the Bureau of Prisons or time served, followed by supervised release, for the reasons set forth below.

### I. Motion for Downward Departure and/or Downward Variance Based on Mr. McDougal's Diminished Mental Capacity

As will be discussed in greater detail below, Mr. McDougal suffers from autism spectrum disorder. Due largely to this disorder, Mr. McDougal engaged in the unlawful behavior that led to his indictment. Exhibit A. Further, Mr. McDougal has been given many psychiatric diagnoses over the years, including oppositional defiant disorder, obsessive-compulsive disorder, attention deficit hyperactivity disorder, posttraumatic stress disorder, and schizoaffective disorder, as indicated in the presentence report.

The Guidelines provide for a downward departure based on diminished mental capacity if "(1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense." U.S.S.G. § 5K2.13. The Application Notes to section 5K2.13 provide: "[s]ignificantly reduced mental capacity" means the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant

knows is wrongful." U.S.S.G. § 5K2.13 n.1.[1] The significantly reduced mental capacity needed to sustain a 5K2.13 departure can stem from adverse mental health conditions, to include autism. *United States v. Knott*, 638 F.Supp.3d 1310 (M.D. Ala. 2022) (finding that the defendant's autism contributed to his conduct in child pornography case and provided a basis for a downward variance); *see also United States v. Bracciale*, 374 F.3d 998, 1003 n.4 (11th Cir. 2004) (noting district court departed downward two levels under section 5K2.13 based on the defendant's bipolar disorder). In addition to the potential for a downward departure for "significantly reduced mental capacity", diminished mental capacity is also a valid ground for a downward variance pursuant to 18 U.S.C. § 3553(a). *Id. see also United States v. McDade*, 399 Fed.Appx. 520, 2010 WL 3933349 (11th Cir. 2010) (district court varied downward from Guidelines range based on diminished mental capacity; Eleventh Circuit affirmed sentence on other grounds); *United States v. Russell*, 322 Fed.Appx. 920, 925-26 (11th Cir. Apr. 13, 2009) *citing Wiggins v. Smith*, 539 U.S. 510, 534-35 (2003) (recognizing mental health as a potential mitigating factor under 18 U.S.C. § 3553(a)).

---

[1] As discussed in greater detail in sections to follow, the Eleventh Circuit held in *United States v. Dupree*, 57 F.4th 1269 (11th Cir. 2023), that, when the text of a term used in a Guideline is unambiguously plain, there is no occasion for a Court to resort to the commentary in applying the Guideline. Mr. McDougal submits that the plain text of section 5K2.13 is clear and unambiguous. The commentary is nonetheless quoted in this Memorandum for guidance and in the event that the Court finds the text of the Guideline to be ambiguous.

Mr. McDougal was suffering from, the perceived unnecessary trauma caused by Dr. Jared Fratini which festered in Mr. McDougal's mind, causing unrelenting pain and anger that would seem irrational to most healthy individuals. While Mr. McDougal's mental health condition does not excuse his conduct, they do significantly mitigate his culpability.  Mr. McDougal is simply not on the same level of culpability as a typical defendant.  Though Mr. McDougal made the conscious decision to engage in the criminal activity underlying this case, the effect that his diminished mental capacity had on that decision should not be discounted.  In comparison to Mr. McDougal, a person of sound mind certainly has a more acute ability to control his or her behavior and to exercise reason in weighing the disadvantages of undertaking criminal activity.  Under the circumstances, Mr. McDougal's history and adverse mental health conditions substantially impaired his ability to exercise the power of reason and to control behavior that he knew was wrong due to his perception of the circumstances surrounding his surgery, the ongoing pain and the absence of relief.  For those reasons, he respectfully requests this Court to consider his diminished mental capacity in determining an appropriate sentence and to, correspondingly, depart downward from the advisory Guidelines range pursuant to section 5K2.13 and/or vary downward pursuant to section 3553(a).

## II. Overall Sentencing Considerations and the Remaining 18 U.S.C. § 3553(a) Factors

The facts and circumstances surrounding Mr. McDougal's offense, though certainly a serious one, do not call for the imposition of a sentence as high as the advisory Guidelines would suggest. The Guidelines, "as a matter of administration and to secure nationwide consistency[,]… should be the starting point and the initial benchmark," but are not the only consideration in sentencing. *Gall v. United States*, 552 U.S. 38, 49 (2007). After properly calculating the Guidelines range, the Court must then make an individualized assessment of the case and consider each of the factors set forth in 18 U.S.C. § 3553(a) before deciding upon a sentence. *Id.* at 49-51. Those factors include:

> (1) the nature and circumstances of the offense;
> (2) the history and characteristics of the defendant;
> (3) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment;
> (4) the need to protect the public; and
> (5) the Guidelines range, as well as
> (6) the kinds of sentences available;
> (7) the need to avoid sentencing disparities among similar defendants who have been found guilty; and
> (8) the need to provide restitution to victims of the offense.

*United States v. Martin*, 455 F.3d 1227, 1236 (11th Cir. 2006) (citations omitted). A consideration of the various 3553(a) factors applicable in the instant case establish that a sentence within the proposed Guidelines range would be a punishment greater than necessary to accomplish the purposes of sentencing set forth in § 3553(a).

### A. Mr. McDougal's History and Characteristics

As set forth above, Mr. McDougal suffers from autism spectrum disorder that date back to his young childhood years.  During his formative years and as a young adult, he has struggled greatly as it relates to relationships with anyone outside of his family and has repeatedly engaged in inappropriate behavior and communications fueled by the same disorder.

### B. The Unique Nature and Circumstances of this Case and the Need to Provide Just Punishment, to Promote Respect for the Law, and to Protect the Public

The commentary to the applicable Guidelines provision, U.S.S.G. § 2A6.1 "Threatening or Harassing Communications; Hoaxes; False Liens" states that the encompassed statutes "cover a wide range of conduct, the seriousness of which depends upon the defendant's intent and the likelihood that the defendant would carry out the threat." U.S.S.G. § 2A6.1, cmt.  The analysis of the relevant conduct is therefore intended to be subjective and aimed at the harm that the defendant intended to cause.  Mr. McDougal had no intent to act on the threats he made. This is evident through the passage of time since during the four years after the surgery, Mr. McDougal did not act on any of the threats.

The nature of the threat shows that Mr. McDougal's intent was merely a misplaced effort to protect others and to be heard, albeit in a misplaced and illogical manner. The irrational nature of the threating communications further indicate that

the threats were the product of a mentally ill mind struggling to cope with Autism, rather than from a person who had any intent to carry out the bizarre threats.

### C. Other Unique Characteristics of the Defendant: The Risk and Danger Mr. McDougal Faces in Prison as a Result of His Autism Disorder

Due to his Autism, Mr. McDougal would be in far greater danger of falling victim of abuse than would a typical defendant, because of his pragmatic communication challenges, social skill deficits, poor sense of identity, and gullibility, his struggles to understand non-verbal cues (gestures, expressions, body language, etc.) from others Mr. McDougal would be an easy target for physical and sexual abuse.

For many of the same reasons, in *Knott*, *supra*, 638 F.Supp.3d 1310, the court found that that the defendant's autism not only supported a downward variance based on the impact that it had on the defendant's conduct, but further supported a downward variance based on the difficulties it would pose to the defendant in the prison environment. The court specifically found that the defendant's autism disorder rendered him "exceptionally vulnerable to emotional and physical abuse." *Id.* at 1320-21. It likewise noted that the condition "would make it highly difficult for him to understand rules and codes of conduct--especially unwritten ones--in the prison setting." *Id.* It went on to reason that "even if [the defendant] were able to understand rules and codes of conduct in the prison setting, the evidence indicated

that his ASD would make it difficult for him to comport his behavior with those norms." *Id.* In the end, the court varied downward from a Guidelines range of 78 to 97 months to impose a sentence of 27 months of home detention. *Id.* at 1312, 1322.

Consistent with the *Knott* court's analysis, studies have shown that the United States prison systems are inadequately equipped to house mentally ill inmates. *See* Sarteschi, Christine, *Mentally Ill Offenders Involved with the U.S. Criminal Justice System* at 5 (July 16, 2013). That is particularly so for inmates with conditions such as Autism who require more specialized treatment beyond simply medication. Mentally ill inmates are much more likely to commit suicide. *Id.* Likewise, as *Knott* recognizes, those inmates are much more likely to be unable to adequately follow the rules in prison simply because of their inability to understand those rules. *Id.* at 5-6. For similar reasons, the mentally ill inmates are much more vulnerable to attacks from other inmates. *Id.* at 7. The availability of mental health professionals in prison setting is woefully limited and threatens to be even more so in light of potential future budget constraints. *See generally Mental Health Problems of Prison and Jail Inmates, Bureau of Justice Statistics Special Report* at 9 (Sep. 2006); *Indicators of Mental Health Problems Reported by Prisoners: Survey of Prison Inmates* (2016); Thompson, Christie and Taylor, Elizabeth, *Treatment Denied: The Mental Health Crisis in Federal Prisons* (Nov. 21, 2018) avail at:

*https://www.themarshallproject.org/2018/11/21/treatment-denied-the-mental-health-crisis-in-federal-prisons*.

The same risks and concerns that the *Knott* defendant faced apply equally to Mr. McDougal.   Mr. McDougal's conditions will undoubtedly create great difficulties for him in the prison environment – difficulties that other inmates do not face.  In addition to the difficulties he'll face due to his mental health conditions, the fact that he has 8-15 bowel movements a day, requiring frequent visits to the toilet, makes him that much more vulnerable and Mr. McDougal be at risk of danger at the hands of other inmates, but he will also be at risk of disciplinary actions from guards based on his potential inability to understand and comply with rules and regulations that may seem simple to others.  While a prison sentence beyond the almost 20 months that he has currently served mostly in the Pinellas County Jail would certainly be punitive, it would have an extraordinarily detrimental effect on Mr. McDougal's mental health.  As the *Knott* court noted, the difficulties that autism will pose for Mr. McDougal in prison are significant and provide a valid basis for a substantial downward variance.

## D. <u>The Kinds of Sentences Available</u>

Regardless of whether this court, allows a reduction of the guidelines based on acceptance of responsibility, Mr. McDougal did enter a guilty plea to all counts as charged. While this plea took place the morning of an anticipated weeklong trial,

his plea did spare the court system and the victims from long jury trial.  As the Supreme Court recognized in *Gall*, a sentence of probation or other such supervision is a "substantial restriction of freedom" and is not merely a means of "letting an offender off easily." *Gall*, 552 U.S. at 48-49, 48 n.4. (internal citations omitted). Based on the unique facts and circumstances of this case, such a sentence would be sufficient, but not greater than necessary to fulfill the statutory purposes of sentencing.

## CONCLUSION

Based on the foregoing, Mr. McDougal respectfully requests that this Honorable Court vary downward from the proposed advisory Guidelines range and impose a sentence of twenty months of incarceration with credit for time served followed by supervised release with terms that the Court deems appropriate.

Respectfully Submitted,

s/ *Bjorn E. Brunvand*
BJORN E. BRUNVAND

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 17, 2025, I electronically filed the

foregoing as a sealed document using the CM/ECF system and provided a true copy

by email to opposing counsel

<div style="margin-left: 50%;">

s/ *Bjorn E. Brunvand*
BJORN E. BRUNVAND
Brunvand, Wise & Farinella
Law Group
615 Turner Street
Clearwater, FL 33756
Telephone:  727-446-7505
Facsimile:  727-446-8147
E-Mail: bjorn@acquitter.com
Florida Bar # 0831077
Attorney for Robert McDougal

</div>